**EFiled: Dec 06 2021 02:10PM EST**
**Transaction ID 67145311**
**Case No. 2021-0025-JRS**

## IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

IN RE: EMISPHERE TECHNOLOGIES, ) **CONSOLIDATED**
INC. STOCKHOLDERS LITIGATION ) **C.A. No. 2021-0025-JRS**

## ORDER ESTABLISHING LEADERSHIP STRUCTURE

**WHEREAS:**

**A.** On November 5, 2020, Novo Nordisk A/S entered into an agreement to acquire Emisphere Technologies, Inc. ("Emisphere") as well as the royalty rights owned by MHR Fund Management LLC (with its affiliates, "MHR") for a total of $1.8 billion (the "Merger").

**B.** Two competing teams of Emisphere stockholders and their counsel seek to be appointed to leadership roles in a consolidated action challenging the fairness of the Merger on behalf of all stockholders of Emisphere who surrendered or sold their Emisphere stock pursuant to the Merger, other than Defendants or their affiliates.

**C.** Under one proposal, Robert K. Brennan, Michael Goldberg, M.D., Stephen Brandenburg, Samuel Menasha and James DeVilliers (the "Long-Term Stockholders") would serve as co-lead plaintiffs. Robbins Geller Rudman & Dowd LLP and Friedlander & Gorris, P.A. would serve as co-lead counsel and Johnson Fistel, LLP would serve as additional plaintiffs' counsel. This team of plaintiffs and counsel shall be referred to collectively as the "LTS Group."

1

**D.** Under the other proposal, IsZo Capital LP ("IsZo") would serve as lead plaintiff. Bernstein Litowitz Berger & Grossmann LLP and Olshan Frome Wolosky LLP would serve as co-lead counsel, and Abraham, Fruchter & Twersky, LLP and Friedman Oster & Tejtel PLLC would serve as additional counsel. This team of litigants and counsel shall be referred to collectively as the "IsZo Group."

**E.** Nicolae Barbulescu, Kenneth Novick, Jack Barouh, and Eliot Houman (collectively, the "Barbulescu Stockholders") were Emisphere stockholders at the time of the Merger. On January 11, 2021, the Barbulescu Stockholders filed the Verified Stockholder Class Action Complaint in C.A. No. 2021-0025-JRS. George Assad, Jr. ("Assad") was also an Emisphere stockholder at the time of the Merger and filed a Verified Class Action Complaint in C.A. No. 2021-0502-JRS on June 8, 2021. Both the Barbulescu Stockholders and Assad have filed joinders supporting the IsZo Group.[1] The IsZo Group has moved to appoint the Barbulescu Stockholders and Assad as additional lead plaintiffs.

**F.** When faced with a leadership dispute, the court's task is to "establish a leadership structure that will provide effective representation."[2] To that end, the

---

[1] Barbulescu Stockholders' Joinder in Support of IsZo Capital LP's Motion for Consolidation and Appointment of Lead Counsel (D.I. 3) (C.A. 2021-0497-JRS); George Assad, Jr.'s Joinder in Support of IsZo Capital LP's Motion for Consolidation and Appointment of Lead Plaintiff and Co-Lead Counsel (D.I. 4).

[2] *In re Del Monte Foods Co. S'holders Litig.*, 2010 WL 5550677, at *6 (Del. Ch. Dec. 31, 2010).

court weighs the "*Hirt* factors," so named after *Hirt v. U.S. Timberlands Service Company, LLC*.[3]  The six factors can be paraphrased as follows:

    **i.**  the quality of the pleading that appears best able to represent the interests of the shareholder class and derivative plaintiffs;

    **ii.**  the relative economic stakes of the competing litigants in the outcome of the lawsuit;

    **iii.**  the willingness and ability of all the contestants to litigate vigorously on behalf of an entire class of shareholders;

    **iv.**  the absence of any conflict between larger, often institutional, stockholders, and smaller stockholders;

    **v.**  the enthusiasm or vigor with which the various contestants have prosecuted the lawsuit; and

    **vi.**  the competence of counsel and their access to the resources necessary to prosecute the claims at issue.[4]

**G.**  The *Hirt* factors provide guidance, but they are not a "scorecard."[5]  "A plaintiff's firm does not 'win' the lead counsel spot by accumulating the most 'points,' as it might by demonstrating that its client owns the most shares or that it has litigated the most [] cases [challenging mergers on the ground of fiduciary duty

---

[3] 2002 WL 1558342 (Del. Ch. July 3, 2002).

[4] *See id.* at *2.

[5] *In re Delphi Fin. Gp. S'holder Litig.*, 2012 WL 424886, at *1 (Del. Ch. Feb. 7, 2012).

breaches]. Instead, each factor is given weight only to the extent that it bears on the ultimate question of what is in the best interests of the plaintiff class."[6]

**H.** For purposes of analysis, Delaware courts often group the *Hirt* factors into categories based on whether they focus more closely on the proposed lead plaintiff or the proposed lead counsel.[7]

1. Factors (ii) and (iv) address attributes of the proposed lead plaintiff. Factor (ii) considers whether the economic stake of the proposed plaintiff is relatively significant, likely leading to meaningful monitoring and reduced agency costs. Factor (iv) asks whether any particular attributes of the proposed plaintiff, such as unique defenses or potentially divergent interests, could diminish the plaintiff's effectiveness.

2. Factors (i), (v), and (vi) address aspects of the proposed lead counsel's ability to provide effective representation. Factors (i) and (v) look at two objective indicia of counsel's ability based on their actions in the specific case—the pleading on which the law firm proposes to litigate and how counsel has acted in the case to date. Factor (vi) calls on the court to consider more generally which law firm is best qualified to handle the matter.

3. Factor (iii) blends the consideration of the law firm and the proposed lead plaintiff by requiring the court to consider how the litigation is likely to unfold and whether the proposed leadership team will operate effectively.

Upon applying the *Hirt* factors to the competing applications for leadership in this case, it appears to the Court that:

---

[6] *Id.*

[7] *E.g.*, *Del Monte Foods*, 2010 WL 5550677, at *6 (noting that the factors are divided to "examine both the proposed lead counsel and the proposed named plaintiff").

4

1.      The LTS Group and the IsZo Group are closely matched.  Both groups are highly qualified and capable of litigating the case.

2.      Lead plaintiff factor (ii) is neutral as between the two groups, and factor (iv) slightly favors the LTS Group.

a.      Factor (ii) asks the Court to consider the relative economic stakes of the competing litigants in the lawsuit's outcome.  This court only accords "great weight" to "substantial relative difference[s]" in the movants' economic stakes; it does not "simply add up the number of shares and select the [stockholder(s)] with the largest absolute representation."[8]  While "*Hirt* stands for the proposition that *relative* economic stakes are given great weight, not simply economic stakes,"[9] Delaware courts have also recognized that the "potential upside" of a large stockholder is that it will typically "align its incentives with the rest of the class."[10]

b.      Here, when the Merger closed (the "Closing Date"), the Long-Term Stockholders collectively owned over 2 million shares (worth nearly $16 million),[11] and IsZo held almost 8 million shares (worth nearly $63 million)—

---

[8] *See Wiehl v. Eon Labs*, 2005 WL 696764, at *3 (Del. Ch. Mar. 22, 2005).

[9] *Id.*

[10] *Ryan v. Mindbody, Inc.*, 2019 WL 4805820, at *3 (Del. Ch. Oct. 1, 2019).

[11] Verified Class Action Compl. ("LTS Compl.") (D.I. 1) (C.A. 2021-0576-JRS) ¶¶ 16–20.

making IsZo Emisphere's largest unaffiliated stockholder.[12] Although IsZo owns roughly four times the shares owned by the Long-Term Stockholders, the Long-Term Stockholders' *relative* economic stake as a percentage of their portfolios far exceeds IsZo's. IsZo's investment in Emisphere represents just over 20% of its current funds under management, whereas three of the five Long-Term Stockholders have over 90% of their net worth invested in Emisphere.[13] On the other hand, IsZo's shares represent almost 20% of the potential class.[14] Thus, from the perspective of evaluating incentives to monitor and prosecute this action, it is difficult to distinguish between the two groups by looking at their economic stake. Both groups have strong economic incentives since both own "a sufficient stake" in Emisphere to motivate them "to monitor counsel and play a meaningful role in conducting the case."[15]

    **c.**    Factor (iv) asks if there is any conflict between larger and smaller stockholders. In evaluating a plaintiff's adequacy, "courts generally accord the

---

[12] Verified Class Action Compl. ("IsZo Compl.") (D.I. 1) (C.A. 2021-0497-JRS) ¶24.

[13] LTS's Br. in Opp'n to IsZo's Mot. for Consolidation and Appointment of Lead Pl. and Co-Lead Counsel (D.I. 27) (C.A. 2021-0497-JRS) at 14.

[14] IsZo's Reply Br. in Support of its Mot. for Consolidation and Appointment of Lead Pl. and Co-Lead Counsel (D.I. 35) (C.A. 2021-0497-JRS) at 6.

[15] *In re Revlon, Inc. S'holders Litig.*, 990 A.2d 940, 955 (Del. Ch. 2010).

greatest weight to the presence or absence of conflicts of interest or economic antagonism."[16] Both groups have alleged that the other is conflicted.

     **i.**     The IsZo Group alleges the LTS Group "may needlessly impose on the class distracting questions about potential conflicts, adequacy, and typicality" for two reasons.[17] *First*, the IsZo Group asserts that the LTS Group consists of "five seemingly unrelated investors plucked by counsel from around the country."[18] According to the IsZo Group, the lack of cohesiveness will result in the inability to collaborate on the decision-making necessary to prosecute the case.[19] This argument, however, ignores the fact that the Long-Term Stockholders have been working cohesively and effectively through counsel for many months.[20] Given this history, and in the absence of evidence to the contrary, I am satisfied that the Long-Term Stockholders will be able to work together in furtherance of the best interests of the class.

---

[16] *In re Celera Corp. S'holder Litig.*, 2012 WL 1020471, at *14 (Del. Ch. Mar. 23, 2012), *aff'd in part, rev'd in part on other grounds*, 59 A.3d 418 (Del. 2012).

[17] IsZo's Answering Br. in Opp'n to LTS's Mot. for Appointment of Lead Pls. and Co-Lead Counsel (D.I. 28) (C.A. 2021-0576-JRS) at 9.

[18] *Id.*

[19] *Id.*

[20] LTS's Reply Br. in Support of its Mot. for Appointment of Lead Pl. and Co-Lead Counsel ("LTS RB") (D.I. 35) (C.A. 2021-0576-JRS) at 13–14.

*Second*, the IsZo Group asserts that Dr. Goldberg is not qualified to be a lead plaintiff.[21] This assertion is based primarily on Dr. Goldberg's conduct in unrelated litigation over which I, coincidentally, presided.[22] In that case, the Court found Dr. Goldberg in contempt of court for violating a *status quo* order and then, after trial, found that Dr. Goldberg had violated his fiduciary duty of loyalty.[23] While the LTS Group acknowledges these concerns, and has advised the Court that Dr. Goldberg would withdraw his bid to be a lead plaintiff if the Court deemed that necessary,[24] they also argue that Dr. Goldberg, as a former Emisphere CEO and significant Emisphere stockholder, has much to offer the Emisphere stockholders by way of insight and strategic input.

If Dr. Goldberg stood alone as a proposed lead plaintiff, the concerns raised by the IsZo Group likely would be disqualifying. But Dr. Goldberg is just one of several stockholders in the LTS Group. And, after considering the record, I am

---

[21] At oral argument on Plaintiffs' motions to appoint lead plaintiff and co-lead counsel, IsZo's counsel remarked "if I was here as an individual I would be saying: How can Dr. Goldberg be an appropriate lead plaintiff. If he's the only one, maybe. But if there's another choice, I can't imagine the class wouldn't prefer that alternative." Oral Argument Transcript ("OA Tr.") (D.I. 55) (C.A. 2021-0576-JRS) at 55:5–8.

[22] *See Macrophage Therapeutics, Inc. v. Goldberg*, C. A. No. 2019-0137 JRS.

[23] *Macrophage Therapeutics, Inc. v. Goldberg*, 2021 WL 25829 (Del. Ch. June 23, 2021).

[24] LTS RB at 13 (noting that Dr. Goldberg "is prepared to withdraw if the Court deems that necessary or appropriate to facilitate the appointment of the remaining Long-Term Stockholders and their counsel.").

satisfied that the benefits he brings to the table outweigh the risk that he will negatively affect the prosecution of the case, particularly given the strength and well-demonstrated integrity of counsel for the LTS Group.  Should any problems with Dr. Goldberg's involvement arise, the Court can make adjustments at that time, as needed.[25]

        **ii.**      For their part, the LTS Group identifies as a conflict IsZo's decision to sell more than two million Emisphere shares between September 2020 and the Closing Date for less than the Merger price.[26]  According to the LTS Group, this significant post-announcement "dump" of Emisphere shares is problematic not only because it allows an argument that IsZo was pleased with the Merger consideration, but also because IsZo allegedly possessed material non-public information regarding Emisphere at the time of the trades.  Not surprisingly, IsZo strongly disagrees that any conflict exists.

On one hand, I agree with the IsZo Group that there is no credible basis in this record to suspect that IsZo engaged in improper trading.  On the other hand, I agree with the LST Group that there is at least some risk Defendants will argue that IsZo's

---

[25] *See Ryan v. Mindbody, Inc.*, 2019 WL 4805820, at *3 (stating "[f]urther, the conflicts surrounding settlement issues identified by Ryan are presently hypothetical only and can be managed by counsel, and monitored by this Court, if they arise.").

[26] LTS RB, Ex. F.

claim of unfair price would be undermined by evidence of IsZo's sale of Emisphere stock below the Merger price. This is an unnecessary risk and one that would be eliminated if the Long-Term Stockholders were appointed co-lead plaintiffs.[27] Accordingly, factor (iv) weighs in favor of the LTS Group, albeit only slightly.

3. The lead counsel factors do not materially favor either group when viewed collectively but, here again, the LTS Group prevails. Factor (i) favors the LTS Group; factor (v) slightly favors the IsZo Group, and factor (vi) does not materially favor either group.

a. Factor (i) evaluates the quality of the pleading that appears best able to represent the interests of the stockholder class and derivative plaintiffs. Both groups filed comprehensive complaints. And, as is often the case in these difficult cases, "[b]oth complaints reflect investigative effort and craftsmanship expected of competent plaintiff's counsel engaged in representative litigation of this Court."[28]

b. In analyzing this factor, this court has often favored the movant who has utilized Section 220 documents more effectively or provided more factual

---

[27] *See In re Towers Watson & Co. Shareholder Litigation,* 2018-0132-TMR, at 63 (Del. Ch. June 5, 2018) (TRANSCRIPT) ("The only real distinction is the potential for conflicts. While the potential conflicts raised here may well not amount to disabling conflicts, with two such equally matched choices, I'm going to pick the counsel and the plaintiff that minimizes the potential for distracting motion practice in the future.").

[28] *In re Investors Bancorp, Inc. S'holder Litig.*, 2016 WL 4257503, at *4 (Del. Ch. Aug. 12, 2016).

fodder to support its claims.[29] Here, however, both contestants have properly and extensively utilized Section 220 documents and, in so doing, have revealed their extensive investigative efforts in thoroughly pled complaints.

      **c.** The pleadings are approximately the same length but can be distinguished by the claims asserted. IsZo brings the following three claims: (1) a breach of fiduciary duty claim against MHR and its founder Mark Rachesky for duties owed as controlling stockholders; (2) breach of fiduciary duty claims against Emisphere's directors, who allegedly were beholden to MHR (including Rachesky himself) and/or turned a blind eye to MHR's blatant diversion of merger consideration; and (3) breach of fiduciary duty claims against Emisphere's co-CEOs, who received a $16 million payoff for approving the Merger at a price allegedly unfair to the unaffiliated stockholders.[30] The LTS Group brings nearly identical claims but adds a dilution claim and a claim against the director defendants for wrongfully impeding the stockholder franchise to lock up the Merger (the "*Blasius* Claim").[31]

---

[29] *See, e.g.*, *id.* at *4–5 (citing cases).

[30] IsZo Compl. ¶¶ 231–53.

[31] LTS Compl. ¶¶ 200–21. Counsel for the LTS Group has acknowledged that they will likely need to amend their complaint to plead a derivative dilution claim in the wake of the Supreme Court's recent decision in *Brookfield*. *See* OA Tr. 27:9–13; *Brookfield Asset Mgt., Inc. v. Rosson*, __ A.3d __, 2021 WL 4260639 (Del. Sept. 2021) (holding that stock dilution claims are solely derivative).

**d.** The IsZo Group is to be commended for its excellent complaint. But, in my view, the LTS Group's complaint is simply more comprehensive. Although "[t]he bigger complaint is not always the better complaint,"[32] the LTS Group's complaint provides more pathways to recovery. While it remains to be seen whether any of the claims are well-pled, the LTS Group's dilution and *Blasius* claims are certainly not frivolous. Accordingly, I am satisfied the LTS Group's complaint provides Plaintiffs the best opportunity to succeed. Factor (i) weighs in their favor.

**e.** Factor (v) asks the Court to evaluate the enthusiasm or vigor with which the various contestants have prosecuted the lawsuit. Both groups have utilized Section 220 litigation to investigate their claims, but the IsZo Group's Section 220 efforts have more substantially benefited the entire class. IsZo, working closely with its attorneys, negotiated six productions of nearly 2,700 pages, which Emisphere provided to all of the other stockholders who sought Section 220 documents. Both groups have relied heavily on the documents produced as a result of the IsZo Group's investigative efforts. Accordingly, this factor weighs slightly in favor of the IsZo Group.

**f.** Factor (vi) asks the Court to assess the competence of counsel and their access to the resources necessary to prosecute the claims at issue. All

---

[32] *In re Investors Bancorp*, 2016 WL 4257503, at 4.

12

counsel involved in this dispute are highly competent, well-funded and very well regarded by the Court. Indeed, they are among the very best lawyers who have dedicated their practices to representing stockholders in corporate governance disputes. Accordingly, factor (vi) does not tip the scale in favor of either group.

4. Factor (iii) asks the Court to examine the willingness and ability of the contestants to litigate vigorously on behalf of the class of stockholders they seek to represent. Both contestants here (plaintiffs and counsel) have exhibited a willingness to litigate this case fully and effectively. Like factor (vi), this factor is a wash.

5. Although the competing applications for leadership present an unusually close call, because the LTS Group's pleading offers more pathways for recovery, IsZo's sale of shares after the Merger was announced presents at least a risk of conflict, and both groups have more than sufficient stakes to motivate them to prosecute the action, the LTS Group has presented the more compelling application under *Hirt* and otherwise.[33]

_____

[33] I have considered whether to order a "forced marriage" of these competing stockholder groups. Ultimately, however, I am satisfied that forcing the contestants to work together, in this case, would not advance the best interests of Emisphere stockholders. At the conclusion of the hearing on the competing leadership applications, I noted that this case presented a particularly close leadership call and urged counsel to return to the bargaining table to work out a way for the competing teams to combine their significant strengths. OA Tr. 78:7–12. Counsel reported back to the Court a week later that, despite best efforts, a mutually satisfactory arrangement could not be reached. Under these circumstances, in my view, a court-ordered marriage is not appropriate. *See Mindbody, Inc.*, 2019 WL 4805820,

**6.** The Long-Term Stockholders are hereby designated as Co-Lead Plaintiffs.

**7.** The law firms of Robbins Geller Rudman & Dowd LLP and Friedlander & Gorris, P.A. are hereby designated as Co-Lead Counsel.

**8.** The law firm of Johnson Fistel, LLP is designated as additional plaintiffs' counsel.

**9.** Co-Lead Counsel shall set policy for the prosecution of this litigation, delegate and monitor the work performed to ensure there is no duplication of effort or unnecessary expense and initiate and coordinate the activities of counsel.

**10.** Co-Lead Counsel shall have the power and responsibility to: coordinate and direct the preparation of pleadings; coordinate and direct the briefing and argument of motions; coordinate and direct the conduct of discovery and other pretrial proceedings; conduct any and all settlement negotiations with counsel for the Defendants; coordinate and direct the preparation for trial of this matter; delegate work responsibilities to selected counsel as may be required; and coordinate and direct any other matters concerning the prosecution or resolution of the consolidation action.

---

at *4 (stating "[c]ognizant that forcing cooperation risks impairing team dynamics, this Court has repeatedly declined to craft its own leadership structure in lieu of selecting a team that the parties have formed themselves.").

**11.** The Long-Term Stockholder's Complaint is deemed to be the operative complaint in the consolidated action.

**IT IS SO ORDERED.**

Dated: December 6, 2021

                                             ***/s/ Joseph R. Slights III***
                                                     Vice Chancellor